Good morning. Will the attorneys who are going to argue this morning approach the lectern, identify yourselves for the record, and who you represent, and advise the court of how much time you would like to argue your case. Good morning. Gregory Ladle, L-A-D-L-E, on behalf of the defendant Lesko, appellant cross appellee. How much time would you like? Fifteen minutes. Very well. I'll give you a few minutes for rebuttal also. Okay. All right. Yes, may the court please. Gregory Gorman, for the plaintiff, appellees and cross appellants. Also, representative for John Paul and Candace Gorman, who are at the table here. Are you going to argue, Mr. Gorman? Yes, I am. How much time would you like? About the same time. Very well. Is the microphone you're using, sir, is that being tracked by our recording devices here, do you know? I have no idea. He gave it to them? Mr. Shaker was going to set it up, so it did. So, they said there was something about the extension cord being long enough so it didn't catch the mic. Is this, it's being picked up? Okay. All right. That's not an amplifier. It's purely a recording device. So, I'm a bit hard of hearing. I'm going to do my best to hear you, sir, but please speak up. I will do my best also. That's why I asked for a microphone. Okay. So, let me know if you have any difficulties. Very well. Good. Thank you all. All right. Mr. Lato, are you ready? Yes. Very well. May it please the Court, Gregory Lato on behalf of the defendant, Yvonne Lesko, in this matter. Let me start by saying this case is a... All right. Hold on. Mr. Gorman? I'm sorry. I just see your microphone. Just turn it off because you're not going to be doing anything with that while Mr. Lato's arguing. Okay? All right. Now, Mr. Lato, that, again, is for amplification. I mean, for a recording. So, you're going to have to speak up. All right? Yes. Okay. Sorry for the interruption. No, that's... This case is a bit of a mess, and you can see that in the briefs. For starters, the plaintiffs elected not to prove damages. In fact, that's one of the questions this Court asked us to address. But the plaintiffs sought equitable relief at trial. Plaintiffs went in, and the trial court determined it was unable to order the equitable relief the plaintiffs sought. Why is that? It's because the plaintiffs didn't ask for a constructive trust in the amount of damages on the property. The plaintiffs asked the trial court to void the trust instruments and to void the will. This was not a will contest. This was not a trust contest. But that's what the plaintiffs asked the court to do in their findings of fact, proposed findings of fact, and their closing arguments. And for some reason, they elected to do that instead of providing a damage witness. The trial court complied with our Supreme Court's rules on this. The tort of interference with expectancy does not invalidate the instruments. It's not an attack on those. It goes towards the defendant. However, the other problem then is compounded because the trial court then sought to cure the plaintiffs' mistakes. The trial court looked and said, they elected not to give any damage witnesses, so I'm going to create evidence. And the court, in effect, created a bifurcated trial. The court, earlier, after we had a discovery closure order entered, after the case was certified for trial, after all the witness has been disclosed, after trial, after submission of finding of fact for the court to consider, after closing argument, the trial court said, plaintiff didn't prove its case, so I'm going to make you go out and get the evidence to prove the plaintiff's case. Well, the judge did find that the plaintiffs were entitled to a one-quarter interest in the real estate, right? And they were entitled, the judge found they were entitled to three-quarters of the value of the real estate. I was under the, the way I read it was, I find that they were all entitled to a quarter of the real estate, the plaintiffs get three-quarters. Correct, correct. And he didn't say anything about value, he said their interest in the real estate was a quarter each. Right, and he says that based on the prior instruments, they would have received that, therefore. That's the expectancy that they were deprived of. Right, so it should be a monetary award. Right. Because that's what the tort is. The Supreme Court has said that, and that goes back to DeHart, that goes back to Alvin, it seeks a monetary sum against the tortfeasor. Otherwise, you have to. But you pointed out that he could have imposed a constructive trust as well, correct? He could have for the value of three-quarters of the real estate. Right. Except for, again, two things on that. One, he could have done that route, he did not. Because the plaintiffs didn't even ask for that. If you read the plaintiff's findings of fact and you read their closing argument, they didn't ask for that. They asked that the property be turned over to them and that the transfer instruments be void. That's a will contest and a challenge to the trust. Both of which they explicitly told the court in their findings of fact, in their closing argument, they were not contesting. Counsel said, we're not contesting the trust. But then they asked the court to void the trust. So to that extent, it's contradictory. They could have challenged the validity of the transfer documents. Well, we all understand they didn't. So they're asking for, they're saying my expectation was that I was going to receive three-quarters, or we were going to receive three-quarters of an interest in the house. Yes. Right? Yes. And that's what we were deprived of. Right. Did they ask for money damages or did they say that's what we want? They said that's what they want. Okay. So wouldn't the money damages be irrelevant then? No, because they're entitled to their lost expectation in terms of a monetary reward. The Supreme Court has said it's a monetary reward. What would happen otherwise is you could have a de facto will contest without challenging the will. You could come in and say, yes, the house passed through probate, but we think there's interference with expectancy, so we get the house. We've delineated the two torts. We've delineated these things. One of them affects the validity. Well, the house didn't go in the probate, did it? No, it passed through a trust, which again, opted not, and they told the court they didn't want, they explicitly told the court we're not challenging the trust. We want no relief from the trust. So beyond that, there's issues of whether or not, and there was no issue, the defendant was the sole owner of the property, certain other aspects to that, which were not addressed in the court, and in fact prevent a constructive trust at this point, because she's not in the owner of the property at this point. She being the defendant? Yes. It's interesting because the court is seeking to try the plaintiff's case. The plaintiffs in their own brief talk about that it was not the plaintiff's burden to provide an accounting as to the money spent by the defendant. The plaintiffs had all the documents, they had all the bank records, they had everything, and they came to the court and they said, here's a starting balance, here's an ending balance. She spent money, we want it all. They had all the financial records. And the trial court said the defendant didn't prove their case as to where the money went. But that's a shift of the burden. The plaintiff has to show something beyond the fact that money was spent. It was conceded by all parties that the decedent had medical care, had medical insurance, had a mortgage, had expenses, had all these utilities. And the plaintiffs just came in and said we're not going to address that, we're just going to do a starting figure, an ending figure, entitled three quarters of everything spent during mom's life. That's what they said. And the trial court agreed with them up to a point. He didn't arrive at the end. So why are we arguing about it? Because I do believe they're going to raise that issue and I just want to address that fact. It is a pattern here of shifting the burden. The plaintiff has a burden under the IPI and under the case law to prove their damages. The plaintiff knew this case was transferred from chancery to law. This case was transferred being told that there's no out-of-bidding relief, this is going to have monetary damages. There's no question that the court found that the plaintiffs proved that they were damaged. They were damaged insofar as their expectancy of three quarters of the house and three quarters of her liquid assets would go to them. That was their expectancy. The court found that your client interfered with that expectancy. I agree with you that there was some messiness about how damages were calculated, how damages were proved, and at the end this notion of using appraisals without giving your client an opportunity to cross-examine the appraisers. I agree with you that that's proper math. I don't think it's helpful to your case to put it on the trial judge being on the plaintiff's side. I think that every losing party feels that the trial judge is on the other side. I think I would just ask you to focus on the damage issues and the problems around those damage issues. I think you hit on it right there, which is new evidence after trial. This was something that was discussed and I prepared my case based on the evidence that was discussed and there was no appraisal. Could the judge have, and I realize it's problematic at this point, but couldn't the judge have ordered your client as the sole beneficiary of the land trust at that point to sell the house, to order the trustee to sell the house? I'm not even 100% sure she was the sole beneficiary of the land trust at that point, to be honest. Who else was the beneficiary? I believe her children might have been on it at that point. This verdict came in 2016. The property was transferred back in 2010. So I don't recall the exact instruments off the top of my head, but to the extent that's an issue that could have been raised and we could have addressed, but again, that seems to be, could they have ordered her to sell the house? That seems like enforcement of a judgment right there. Well, could the court have said, you've proven the expectation deprivation. They've been damaged because they didn't get what they expected. I'm impressing or opposing a three-quarters interest in the property. Yes, they could have done that. Again, that would become problematic to the extent that, okay, so now it doesn't have to be sold. What we've done is rather than one owner, whoever the beneficiary was, or 50 owners under the trust, you now have three more that own three-quarters of the property. I could see that it could be done. I've seen properties partitioned on that. I don't recall specifically ever a judge, other than a specific performance on a contract case, awarding ownership of something. I think it's seeking to cure a failure of proving their damages. It would be like, the best way I can think of this is, if I've got an auto accident case and I don't submit my medical bills because I want to show they were hurt, I then can't complain that I didn't submit my medical bills. And if the judge comes back to me and says, yes, you were hurt, but you didn't submit your medical bills, but we're going to award you 100 percent of your medical bills down the road because we know those were caused by it, that seems what this is to me. It's trying to fix a deficiency caused by a lack of proof. And while I understand a general jurisdiction court and a trial court has broad powers, I guess the question comes in, at what point is it the judge's job to fix that which was not proven in court? That's a fair point. We don't want to take up all your time on that issue, but I mean, that's a big question. I think the other points, the bifurcation of the trial I think is very clear. Illinois law goes back 45 years on that point. But is it hard to solve jury trial cases? Is there any bench trial case in which the court has found it to be an error to bifurcate in this way? Well, our Supreme Court says there's no power to bifurcate it except by statute. And that goes back to a board by agreement. And that would be the Richter case, Richter v. Northwestern Hospital, where Mr. Ring and the hospital, they acquiesced to it. We clearly didn't acquiesce. It's throughout all of our motions. We prepared this case based on what was in front of us. Likewise, the problems of the critical level cross-examination on these appraisals. I mean, while we're standing here, we were given two appraisals back in July, one for $500,000, one for $700,000 roughly. The ones that were submitted to the trial court then were both $725,000. The trial court never even saw the point of sending an appraisal for $525,000 that had previously been disclosed to us. We never got to bring it up. I never got to question anybody about these valuations that said a new appraisal that was never disclosedly tendered to the trial court. And I came in cross-examined it. If there was an appropriate procedure, hypothetically, what would the valuation date properly be? The date of the judgment or the date of the deprivation? I think probably it is a judgment call based on my readings of divorce law more recently where they had done more bifurcation. I think the appellate court has consistently said it's the date of the hearing for the appraisals. To that extent, you know, when you have a bifurcated trial, it appears that you look at the date of the entry of the award. So I believe that's the correct date based on my subsequent research into that matter. However, I do think to some extent the loss occurred in 2010, so that's where it should be. So to the extent that bifurcation in divorce says you look at the time of judgment, but the tort here is what was to be expected. What was to be expected was in 2010 they would have received X dollars. So that is their loss. Or they would have received an interest in real estate. True, true. Unliquidated. Right. That's, again, that's true. And I can't speak to why this was transferred from chancery. We're all trying to come to a law case. We discussed damages. And the equitable relief sought wasn't a trust. It wasn't a, it literally, the argument, and you can read it in that closing argument, and you can read it in that proposed final effects was to void these agreements. That is not tortious interference with expectancy. I'm trying a case based on the law as it exists. I'm trying a case based on the fact that they're supposed to award monetary damages against a tortfeasor, granted the trial court has broad provisions and powers. I'm not trying a case based on undue influence to void a document, an instrument, because that wasn't the case before us. That's not what the law was. And so when I prepared my case and tried my case and looked at the evidence, I looked at what the law says, I looked at what the evidence was, and I addressed it that way. And to, I can't tell you why it was done that way by the other side. I don't know. But I'm entitled to try the case based on the law as it is. And what we're trying to do is craft a remedy for a decision at trial not to produce evidence. There's no justification for that. Do you want to touch on a few more points? Well, I think I addressed the fact that, in fact, in light of the fact that the defendant doesn't even own the property at this point. Well, I agree this court has broad powers under 366 and specifically under part 5. And it could, in its discretion, impose a constructive trust on pretty much anything it wanted that the defendant owned. It can't impose a constructive trust on property the defendant doesn't own. And that goes back to Harding v. Candy Club. And there's a two-pronged test. One, was it a fiduciary relationship? Was there fraud? Those kinds of things, which this court could find should it choose to. But part two is then that the defendant has to be in possession of the rest, the property. And that's not the case here. So I'm not questioning this court's authority to do so, but I don't think it has the ability to do so because, quite simply, the defendant doesn't own the property. And the property was conveyed before the entry of the judgment based on the appraisals? No, it was conveyed before even the appraisals went. Was it conveyed before trial or during trial? I don't remember off the top of my head. I thought the injunction wasn't lifted until after the appraisals. The injunction was lifted in April of 2016. There was a transfer of part of the interest of the property in December of 2015, if I recall. And then the remainder of her interest was transferred in August of 2016. And subsequently the property was mortgaged as well. And that was before the final entry? Right. The final entry of judgment wasn't until October of 2016. Okay. What is it specifically that you're asking from us? At this point, I believe a new trial is proper. I believe it's a remand. The property has been transferred. The property has been transferred. Right. So remand for a new trial. I believe there were errors in trial in bifurcating the damages. Well, that's if you don't prevail on the issue of proof of the underlying claim. Correct. Correct. My first thought is that I don't believe the trial court properly applied the law as to interference with expectancy, specifically with regard to the fact that the attorney involved testified as to the person's intent, that, in fact, he was alone with the decedent who made the decisions, with case law in point that, as that matter, because the trial court focused not on the defendant's conduct, but, as you can read throughout its appearance, it focused on the decedent's state of mind. It seems that the plaintiffs tried an undue influence challenge to the will and trust. That's the case they presented. It was not a cautious interference case. They didn't present the damage evidence. They didn't present issues as to the defendant's conduct. Their testimony was focused on the decedent's mental state. And the trial court said that. A presumption can arise of undue influence, can it not, in this kind of relationship? It can. And what our courts have specifically said is, for that presumption to arise, the person with the fiduciary has to be directly involved in the creation of the instrument. Specifically, there's a case in point where the fiduciary called the attorney, set everything up, brought the person there. That person was deemed incompetent, but was not involved in the actual execution and signing of the documents. That was done separately. And we have held that is sufficient. There is no presumption there. And that was reversed. That judgment was reversed on that case. That is akin to what happened here. There's a discussion. One of the witnesses talked about at some point in earlier years, where the siblings were fighting, the defendant made a comment about removing one sibling, and the attorney said no. And the will was equal among all four, and that was it. And the attorney testified, and it's clear, and there's no, but it was just her. He met with her, as a matter of habit and practice, and recalled specific parts of the conversation. I met with her individually. I made sure it was her intent. I made sure it was free and clear of her will. The other person wasn't in the room. So in case law says she's got to be in the room, she's got to be doing something there for that presumption to arise. And they didn't present that evidence. Anything further? No. Thank you. Very well. Thank you. Mr. Kwan. Thank you. The negative part to me is, first, I would like to correct something Counselor said, which I believe is incorrect, regarding the remedies available in an intentional interference with expectancy case. He said there were limited damages. I believe that's not true. In the in-related misdemeanor to the Ellis case, there were a lot of damages, equitable means, or constructive trust. The only bond that was lended only at the time was a beneficial interest in the trust. And she had a court of direction over that trust. What we asked for in the second amendment complaint was that the court direct her to execute an assignment to the plaintiff's new court. And direction conveyed so that we could prevent exactly what happened. That is, this pressure on conveyance in which she gave away the trust assets to her daughter for no consideration. But it's happened, it's gone, now what? Assuming you're right, that the judge could have ordered a constructive trust at some point, at this point, she doesn't have the rest anymore. She doesn't have the house anymore. No, she doesn't, her daughter doesn't. And the bank has a piece of it. We do have a, yes, the bank has a nice high and short, but what should have been is not exactly. Anyway, at this point, the property belongs to her daughter. There is no trust property anymore. She conveyed it to her daughter. She did not convey anything of interest. There was a trustee's deed to the daughter. Okay. What we do have pending in the lower court right now is a position to find out that that was a fraudulent conveyance. Right. And to undo that. Right. Which I believe this court can do. Wrong. I don't think so. This court has the power to do anything. We sometimes appear like we can do anything, but we can't. For example, we cannot order the consolidation, which you asked for the collection proceedings. In this case, that's a matter for the trial court. That's a matter for the circuit court accounting. We cannot consolidate cases. And we can't order a remedy that would be meaningless, a constructive trust over property that the defendant no longer has. If you believe under Rule 366, you can declare that a fraudulent conveyance and order that it be returned. By the way, the daughter is now. . . Not before us. I understand. That's a separate proceeding. Well, this is a court that did it by revamp, and it's directed to the lower court. Mr. Williams contends that you did not prove your tortious interference case because an element of that offense is, or cause of action is, damages, and that you didn't prove any damages after the case was concluded. You rested, the defense rested, and they argued that there's been no. . . Even if the court was persuaded that your clients were interfered with, you didn't establish what their damages were. That's true because we were not seeking monetary damage or work on that portion of the case. We did get damages as to the money she absconded with. But as to the trust property, we were asking for a favorable relief. The problem was the judge was mistaken in believing he did not have authority to give that favorable relief, and that he was limited to damages only. So you were seeking. . . We were deprived of our three-quarters interest in the property. Give us that three-quarters interest. Correct. Whatever it's worth. Right. Is that your position? Well, we were asking that if we were given it, it doesn't matter what it's worth. If we're given the three-quarters interest, we don't need an appraisal. We sell it. We get the joint market value. That would be up to them. Well, that was your position in the trial court. Yes. That's specifically what we asked for the favorable relief. We asked that the defendant be ordered to convey the three-quarters interest. That's what the plan is. The judge didn't have authority to do that. He believed because it was transferred from chance to law, he could only award damages. That was incorrect. Article 6, Section 9 of the Illinois Constitution would caution that distinction between chancery, equitable, and legal limities. And the circuit court has original jurisdiction over equity or law as a full circuit judge. And the provision of chancery in the law is really just an administrative distinction made for the convenience of the courts. In some downstate courts, the client might judge for all these things. It was not intended. It could have been, and that's what we asked for. We weren't asking for three-quarters of the value of the property. We were asking for the property. That's what they were entitled to. That's what was taken from them. To put it to the status quo, we required the equity to require the defendant to execute an assignment of three-quarters of the beneficial interest to the plaintiffs. That's what we sought. That's what should have occurred. Okay, now let's assume that you were correct and the court was in error. I'm not saying Judge McGee was or wasn't, but let's assume you were right. Now what do we do, or what do you do, that the property now has been conveyed away from the defendant? Now what's the effect of that? Well, I think we're stuck to the lesson of the lower court. Right now, there's a citation of the defendant. We've got to find out if there's a fraudulent conveyance in the proceeding that's pending down the road. That judge can undo the conveyance and already be assigned to the plaintiffs. Okay, next point. But you're still left with the remedy that Judge McGee ordered was a money damages remedy based on appraisals that the defendant never got to cross-examine in a bifurcated trial that the defendant never agreed to. So we still have all those problems. Yes? What do we do about all that? I think there's a remedy by giving the three-quarters interest back to the plaintiffs. The plaintiffs then can sell the property. We don't have to worry about what appraisals take. Appraisals are just educated estimates as to what a pretty well-enabled buyer would pay to a pretty well-enabled client. So essentially, you're saying let's pretend all that never happened. Yes. The damages was not something to stop us. We didn't have any evidence of damages on it. It was a strike. It was never the remedy we were seeking. We believe the court was incorrect. Okay. Let me go to a smaller question, which is there were two orders. There was one, I think, in January and one in April by Judge McGee. The January order, there was one, and then there was a DWP by mistake, and then there was a corrected order January 29th, and that order said take, I think, $155,000 and divide it among the four plaintiffs, and in addition, they're entitled to three-quarters of the value of the house. Then when he entered his order in April, he did not reincorporate the January order. And I think you think that that was a mistake. He meant to do that. I feel quite sure of it. Right. So what do we do about that? Keep the microphone up, please. Right. Here's an important problem. The problem is now under the jurisdiction of the court. And as I said before, I think the proper remedy is to when it wants to be a highly gaugeable convenience, give that property, three-quarters, back to the plaintiffs who are at the orderly. Any other questions? Judge McCain did order a number, $66,700, for the money that she took from the Rothschild account. Right. The checking account. That should be a problem. And we believe that the echo of what we asked for  and that's the only way to get the property back. It must get back into the hands of the plaintiffs because the transfer to the daughter has to be found out in court. She did that while the property was closed under a citation as well. So she just ignored the court order. The transfer of the property. Even without the citation, that would have been a fraudulent convenience. But with the citation, it's also a violation of the citation order. We do have the daughter on the first page. Now the proceedings down below. And I believe this clerk can direct the clerk below to make the plaintiff a fraudulent convenience and to avoid the transfer to the daughter which is a status quo incident. Anything else, Mr. Gorman? No, thank you. Thank you very much. Mr. Lato? Yes, sir. Briefly, I don't want to get too much into the ancillary proceedings, but the transfer was referenced that it occurred after the citation order. The citation order was issued in December of 2000. But regardless, I said we're the mess here. And I just want to point to something in closing argument that I think indicates the problem that's going on here. The plaintiff stated in their closing argument, we're not asking for any relief from the trust. The trust is the land trust. So in the closing argument, they're telling the court, we don't want any relief from the land trust. But then they're asking, but they presented no damages and asked for the land trust to change beneficial owners. In fact, they're filing a... Did they ask for three quarters interest in the house? No. What they asked for specifically in the proposed findings of fact was that the amendment of the trust agreement made on August 13, 2009 is non-void. They asked for the trial court to void the transfer instrument. That's not tortuous interference. They apparently did that at their choice because they didn't want to present monetary damages. He's just stated that he was seeking an equitable relief and elected not to produce damages at trial. In fact, if I understand their argument correctly just now, they're suggesting to vacate the judgment and again, Judge McGee entered in October of 2016 and then just award them the property, which is what they wanted at trial. But again, without regard to those other proceedings, it doesn't... The plaintiffs, for whatever reason, elected not to produce damage witnesses. They put all their eggs in one basket and they didn't get what they wanted. I can't say why, but that's... I tried the case based on the evidence that was in front of me. I think as a matter of law, based on the case law, they didn't prove their case on the tortuous interference because they didn't show those items needed for presumption. They instead attacked the decedent's mental state. And beyond that, the way these damages were calculated, the way this opinion is, I think the only solution then, assuming this Court disagrees with me on that, is that they be remanded for a whole new trial because clearly there's this bifurcation and the evidence outside the crucible of cross-examination, so to speak, is problematic. No, I don't have a question, but if you're done, I have a comment. Okay. And I see your client's not here, but this is the trial judge in me. And I think one point Mr. Ladle makes is somewhat incontrovertible, which is it's a little bit of a mess. And I really urge you guys, I know only one side, I think clients are here, but to try to settle this case because this has become... This has got a million legal issues in it. You see the hundreds of pages of briefing. We've told you our power to fix things is not unlimited. And sometimes solutions are not in the law but in the people. And I just want to put that out there to you all while we take this under advisement. You may rise. We were crossing balance, but I think we have... Okay. I would like to... Keep your voice up, Mr. Borman. Thank you. I would like to correct counsel, sir. Yes. Counsel continues to insist that we're seeking relief from the trust. We're never seeking relief from the trust. We're seeking relief from the beneficiary of the trust. Counsel, in your complaint, and I see where the disconnect is because your complaint says, in order that Defendant Lesko be directed to execute an amendment to the land trust adding the preplainers as beneficiaries of such trust, you can't do that if the trust is not a party. I think that's counsel's point. I think your point, which is once he found this claim, he had the authority to order a constructive trust, is also true. So, you know, I think there was a disconnect here in terms of what you were seeking, and I realize, like any case, this case had a long life and went through evolutions and went from chancery and then went to law. So, but your complaint does still sound in an amendment to the trust, which would require that the trust be a party, I think, is Mr. Ladle's point. But I don't think that's correct because the judge could have ordered the beneficiary of the trust to make an assignment. The trust is not it. There's no relief sought from the trust in that. You can order relief. It's a thin line. I get what you're saying. That's exactly what we asked for. Thank you, counsel. Counsel, I told you this before. The judge, in the motions, said, oh, that's what we asked for. Make her give that interest back. That's not asking the trust to do anything. All right. Anything further, Mr. Borman? I'll speak. Your Honor, I'm John Quall. All right. This is not a never-ending proceeding. Your Honor, the court asked Mr. Ladle a couple of questions, and Mr. Ladle did not have the answers for the court. The first question was. . . No, that's right. That's not. . . Mr. Borman Sr. was the designated arguing attorney. So, consistent with Justice Smith's suggestion, if the parties do wish to see if they can explore a settlement, the appellate court does have a mediation committee that would not consist of any of us. But if you want to engage that, you should do that in writing within the next five days and the court will certainly take that into consideration pending its disposition of this case. So, we thank everybody for their efforts in this regard. It is an interesting case and complicated in many ways, and we appreciate your efforts in trying to sort out the issues for us. So, with that, we'll take the matter under advisement. The court is adjourned.